IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>v.<br><br>GIOVANNIE VARGAS<br>Defendant. | CRIMINAL NO.   16-168(GAG) |

SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

**COMES NOW** defendant, **Giovannie Vargas, "Vargas",** represented by the Federal Public Defender for the District of Puerto Rico and before this Honorable Court respectfully requests, states, prays and alleges:

**"To have once been a criminal is no disgrace. To remain a criminal is the disgrace"** *Malcolm X*

### I.     INTRODUCTION

The present case has been scheduled for sentencing on May 16, 2017. (D.E. #42) The United States Probation Officer, "USPO" filed the Pre-Sentence Investigation Report, "PSR", on April 7, 2017. (D.E. #45) The PSR has been discussed with Vargas. Informal objections were sent to the USPO. The addendum to the PSR is pending. Once the addendum if filed, Vargas will file a motion including all pending objections.

### II.    RELIEF SOUGHT

All arguments in this memorandum are presented to persuade the Court to sentence Vargas to 27 months of imprisonment which is the lower end of guideline 17 cross-referenced to a CHC of II. .

The suggested imprisonment term of 27 months as to each count concurrently followed by a supervised release term addresses most 18 U.S.C. § 3553 factors. Budgetary constraints and the failing prison system are unable to provide defendants with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. These last factors are crucial for the success of Vargas' rehabilitation and a successful reintegration into society. Prison time in excess to the time agreed by the parties could have the effect of limiting Vargas' rehabilitation.

This Court has had ample opportunity to deal with post sentencing revocation proceedings to know that supervision is not a walk in the park, yet USPO is the agency with the personal contact and resources to provide the tools for success in the community.

III.  **VERSION OF FACTS**

Vargas accepts the elements of the offense. On March 5, 2016 he, having been convicted of a crime punishable by an imprisonment term in excess of 1 year was in possession of a weapon which had been modified to shoot more than one round without manual reloading.

Negotiation attempts began on the day of the preliminary and detention hearings, both waived in an attempt to persuade the Government to negotiate a more lenient sentence. Some time later, Vargas was informed by AUSA Amy that she was unable to extend a plea agreement in the present case due to office policy which goes against offering agreements to people charged

under 18 U.S.C. §922(o). We ask that the Court consider Vargas' action of waiving both detention and preliminary hearings in mitigation.

IV.     **VARGAS' BACKGROUND**

Vargas' mother, Ramona Luisa Maldonado, was 16-tears-old when she gave birth to Vargas followed two years later by Elliot. She single parent and had support from Vargas' father until Vargas was five-years-old that his father was murdered. Vargas is unable to talk about his father without being affected emotionally. Due to his emotional reaction, USPO was unable to continue with questions relating to his relationship with his father. Maldonado had the support of her mother and her stepfather when raising Vargas and his five siblings from four different relationships. Vargas did poorly in school. He studied until 6th grade having been left back on several occasions and is currently illiterate. Vargas has full support from his mother and grandmother and her husband.

Vargas has never been formally employed. Yet, with odd jobs he was able to assist in the support of two of his four children. Vargas had his first child, Johannie, when he was 15-yrs-old. Vargas' mother retains the custody of Johannie since she was a baby because she was removed from her mother's custody by the Family Services Department. Vargas also supports and participated in the birth and rearing of Joelyanis. Nevertheless due to his prior incarceration and the present case, he has been unable to remain in contact and support his son Jesus Joel or with his youngest child Joelys who currently lives in Pennsylvania. Upon release, Vargas explains he will do anything to be a better father and son.

V.  **ARGUMENTS IN FAVOR OF A SENTENCE OF: 27 months of imprisonment**

A   **Awareness of potential penalties may serve as a general deterrence**. Certainty of punishment is more important than duration of punishment in deterring offenders from re-offending. Excessive punishment will result in despair and will substantially limit Vargas' chances of reintegrating into society. The current predicament has made Vargas aware of potential outcome of his actions if he continues the path of unlawful living. Imprisonment for this first time prisoner has caused an emotional response, such as fear, anxiety and guilt.   In this particular case, it has had the effect of compelling Vargas to voice an interest in avoiding future punishment, and has thus discouraged re-offense.

Vargas is aware a new offense would be too costly in terms of all the advantages associated with freedom. Supervision will serve to mold Vargas' future and provide additional awareness of potential outcomes.

B.  **Need to address why Vargas committed the crime**. Vargas commit the instant offense due to a combination of factors. He lacked perception towards his surroundings and his life choices. He didn't put enough thought into his actions and the potential consequences. He is in need of mental health treatment programs to assist him in improving his coping skills and poor choice development and to overcome the grief from the death of his father. He needs to continue with educational efforts, and job training as opposed to longer periods of incarceration.

C.  **Prison is a school for criminals**.

Vargas is a 27-year-old man who is illiterate and does not speak English. This makes him a potential recruit. Young offenders such as Vargas are more susceptible to negative

influences than other adults. Facing the reality of his sentence and being far away from home, his common law wife, mother and children will be hard. He will have to work hard to fit in while still fighting to stand out as the person who is just passing by in the penal system without absorbing the negative influences. Vargas's identity is still developing. He could adopt negative behaviors since this is what he will be constantly exposed to. The fear of victimization or assault produces the need for security. Young prisoners are more susceptible to rely on gangs and weapons for survival. If Vargas is focused on surviving, he will not be able to focus on rehabilitation and changing his thinking and behavior. He will be focused on survival.

Those who are incarcerated become more sophisticated and more entrenched criminals. During imprisonment, inmates learn the norms of the antisocial subculture from other prisoners. Although imprisonment will protect the public against Vargas while he is under custody, noting that the present case is Vargas only experience with violence, rehabilitation, education efforts and job training is what will make him a productive member of society. The longer Vargas stays in prison, the higher probability he will sever ties and weaken social bonds. These bonds include interpersonal, familial, work place, and economic relationships. Weakened social bonds resulting from incarceration are likely to increase an offender's propensity to commit new crimes after release. The result will be a higher the degree of institutionalization, thus the greater likelihood of re-offending.

The process of institutionalization includes, among others, the following adaptations. Inmates develop dependence on the structure of the institutions which they relinquish

freedom and autonomy to make their own choices. Those who return from periods of incarceration still dependent on institutional structures and routines cannot be expected to effectively organize their lives or exercise the initiative and autonomous decision making that is required. They can also develop hyper vigilance, interpersonal distrust and suspicion for fear of threat and personal risk. Those who still suffer the negative effects of a distrusting and hyper vigilant adaptation to prison life will find it difficult to promote trust and authenticity in their relationships. They struggle to control and suppress their own emotional reactions and alienate themselves from others. Some learn to find safety in becoming invisible, they withdraw socially and become isolated.

Those who remain emotionally over-controlled and alienated from others will experience problems being psychologically available and nurturing. They could not be more dysfunctional in family settings where closeness and interdependency is needed. Inmates are denied their basic privacy rights and control over mundane decisions we take for granted to the point of developing a lack of self-worth and predisposition for degradation.

> "In many institutions the lack of meaningful programming has deprived them of pro-social or positive activities in which to engage while incarcerated. Few prisoners are given access to gainful employment where they can obtain meaningful job skills and earn adequate compensation; those who do work are assigned to menial tasks that they perform for only a few hours a day. With rare exceptions — those very few states that permit highly regulated and infrequent conjugal visits — they are prohibited from sexual contact of any kind. Attempts to address many of the basic needs and desires that are the focus of normal day-to-day existence in the free world — to recreate, to work, to love — necessarily draws them closer to an illicit prisoner culture that for many represents the only apparent and meaningful way of being." [3]

---

[3] From Prison to Home: The Effect of Incarceration and reentry on children, Families and Communities, A Psychological Impact of

The continued embrace of the negative aspects of the prison culture will sabotage Vargas' opportunity to reenter society.

## V.     CONCLUSION

Vargas is aware of the seriousness of his actions and he has accepted responsibility aware that a prison term is a consequence of his actions. We request that the court consider that, in this particular circumstances, a sentence of 27 months of imprisonment and a supervised release term to follow addresses all 18 U.S.C § 3553 factors.

Vargas does not wish to be seen as a failure, as a disgrace. Vargas acted like a criminal. But that is not who he is. He wants to be a success at leaving his criminal past behind. He wants to be a success at being the person he has been throughout his life and the potential his friends and family see.

**WHEREFORE,** it is respectfully requested that the Court note the present information, and in consequence sentence Vargas to an imprisonment term of 27 months and a supervised release term to follow.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties of record.

---

Incarceration: Implications for Post-Prison Adjustment Craig Haney, University of California, Santa Cruz December 2001.http://aspe.hhs.gov/hsp/prison2home02/Haney.htm

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, this 3rd day of May, 2017

        **ERIC A. VOS, ESQ.**
        **Federal Public Defender**
        **District of Puerto Rico**

        S/Yasmin Irizarry-Pietri
        Yasmin Irizarry-Pietri,
        Assistant Federal Public Defender,
        USDC-PR 213505
        241 F.D. Roosevelt Avenue
        San Juan, PR    00918-2305
        Phone No. (787) 281-4922
        Yasmin_Irizarry@fd.org